IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ROBERT BLAKE,

      Plaintiff,

v.                          Case No. 2:12-cv-00798

PAUL PERRY, RUSS MATHENY,
ONE FROM MENTAL HEALTH, and
MARVIN PLUMLEY, Deputy Warden,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

On March 21, 2012, the plaintiff filed the instant Complaint (ECF No. 2).  On March 28, 2012, the plaintiff filed an Amended Complaint (ECF No. 7.)[1]  Because the plaintiff has, while incarcerated, filed at least three cases that have been found to be frivolous or malicious or to fail to state a claim upon which relief may be granted, the plaintiff is not permitted to proceed without prepayment of fees and costs, unless he can show that he is under imminent danger of serious physical injury.  The plaintiff did not make such a showing in this case.  Accordingly, on March 22, 2012, the plaintiff was ordered to pay the $350 filing fee in order to proceed with this civil action.  (ECF No. 5.)  On April 10, 2012, the $350 filing fee was received, and this matter is ready for initial screening, pursuant to 28 U.S.C. § 1915A and 1915(e)(2)(B).

---

[1]  The plaintiff has a consistent habit of mailing the same or similar Complaints within a short period of time of the receipt of a prior Complaint, naming the same parties, but possibly listing them in a different order and with the later Complaint containing a different date than the prior Complaint.  Such was the case here.  Accordingly, the Clerk was directed to docket the later Complaint as an "Amended Complaint" which will supersede the first Complaint.

## <u>STANDARD OF REVIEW</u>

Section 1915(e)(2) provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that – * * * (B)the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted or (iii) seeks monetary relief against a defendant who is immune from such relief.

Thus, notwithstanding the payment of the filing fee, the undersigned must conduct an initial screening of the Complaint and recommend dismissal of the same, if it meets the above criteria.  Section 1915A requires the same initial screening of all complaints by prisoners who seek redress from a governmental entity, officer or employee.  28 U.S.C. § 1915A.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that

2

states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.
* * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The plaintiff's Amended Complaint will be reviewed under these statutes and the *Twombly/Iqbal* standard.

## THE PLAINTIFF'S ALLEGATIONS AND REQUEST FOR RELIEF

The plaintiff filed an Amended Complaint on March 28, 2012, prior to service of process, against the same defendants.  Thus, the undersigned will conduct the initial screening of the Amended Complaint (ECF No. 7.)  The Amended Complaint states in full [*verbatim*]:

I seen the Pro Committee on May 27th 2010 for my level five status.  They denied me my level five and dropped me to a level one.  The Pro Committee states I had negative enteries [sic; entries] in my chronological log, but did not elaborate on what they were.  I have not had a write up in over a year and a half, and have complied with all requirements of the Q.O.L. Program.  How can I rebut the allegations in my log if I am denied the right to a fair hearing.  The hearing on May 27, 2010 was done in a cursory fashion.  I seek for a new hearing and provided with the documentation and proper evidence to prepare for this new hearing.  I should not have been dropped to a level one status from a level four considering the circumstances involved.

(*Id.* at 4-5.)  The plaintiff requests the following relief:

What I would like for the court to do is restore my level four status with another Pro Committee hearing for my level five and retain me for an extra 60 days before scheduling a new Pro Committee hearing for my level five.

(*Id.* at 5.)

## ANALYSIS

Prisoners do not have an independent constitutionally recognized liberty interest in their security classification or placement.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (*receded from in Sandin v. Conner*, 515 U.S. 472 (1995)); *Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006).  No liberty interest is created even when administrative segregation involves "severe hardships" such as denial of access to educational, recreational, vocational and rehabilitation programs, or other restrictions in privileges, or even in confinement to a cell for long periods of time.  *Hewitt*, 459 U.S. at 468.  In fact, "it is reasonable for a prisoner to expect to be administratively segregated at some point in their incarceration."  *Casey v. Lewis*, 837 F. Supp. 1009 (D. Ariz. 1993) (citing *Hewitt*, 459 U.S. at 468.)  Likewise is there no liberty interest implicated in a prisoner's reclassification or transfer.  *Meacham v. Fano*, 427 U.S. 215 (1976).

However, the Supreme Court, in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), recognized that

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.   [Citation omitted.]  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Claus of its own force, [citations omitted], nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.  [Emphasis added.]

The Court noted that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Id.* at 485 (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).

> We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.  The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant

4

> exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. * * * Thus, Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction. * * * Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

*Id.* at 486. The Court rejected the position that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. *Id.* at 484.

Thus, an inmate who alleges that his right to due process of law was denied in connection with a reclassification of his custody status to administrative segregation must show that he had a protected liberty interest in his prior non-administrative segregation status because (1) administrative segregation imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, or (2) that administrative segregation exceeds similar, but totally discretionary, confinement in either duration or degree of restriction, or (3) that administrative segregation worked a major disruption in his environment. Because the plaintiff cannot demonstrate the loss of a liberty interest through the loss of good time credit, he has attempted to establish a due process right based upon his assertions that his placement in administrative segregation resulted in an atypical and significant hardship to him.

The authority addressing the constitutional implications of long-term administrative segregation since *Sandin* is varied. In *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997), the Fourth Circuit, applying *Sandin*, established that:

> In order to determine whether the inmates possessed a liberty interest, we must compare the conditions to which they were exposed in administrative segregation with those they would expect to experience as an ordinary incident of prison life. [Citation omitted.] This analysis necessarily is fact specific in that it requires a determination of the

conditions the prisoner maintains give rise to a liberty interest and those incident to normal prison life.

*Beverati* further notes, however, that whether the conditions impose an atypical and significant hardship creating a liberty interest is a question of law.  *Id.*

In the decision of *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir. 1999) (hereinafter *Five Percenters*), the Fourth Circuit addressed the long-term segregation of prisoners who were members of a purported religious group that was classified as a security threat. *Five Percenters* found that the fact that the inmates were confined to their cells for twenty-three hours per day without radio or television, that they receive only five hours of exercise per week, and that they may not participate in prison work, school or study programs, though highly restrictive, was not unconstitutional.  Moreover, the Court found the indefinite duration of the inmates' segregation is simply one of many factors to consider in determining the constitutionality of long-term segregation.  174 F.3d at 471-72.

The Supreme Court again addressed this issue in *Wilkinson v. Austin*, 545 U.S. 209 (2005).  There, the Court found that the restrictive conditions in the Ohio State Penitentiary, a "supermax" facility[2], did create an atypical and significant hardship within the correctional context, thus giving rise to a liberty interest in avoiding confinement therein.  545 U.S. at 223-224.  The Court further found, however, that the Ohio Department of Corrections' policy concerning placement and continued confinement at the supermax facility provided a sufficient level of process to satisfy due process requirements.  *Id.* at 225.  The conditions discussed in *Wilkinson* are these:

---

[2] As noted in *Wilkinson*, "'Supermax' prisons are maximum-security facilities with highly-restrictive conditions, designed to segregate the most dangerous prisoners from the general population.  Their use has increased in recent years, in part as a response to the rise of prison gangs and prison violence."  545 U.S. at 209.

almost all human contact is prohibited, including cell-to-cell conversation, cell lights may be dimmed, but remain on for twenty-four hours, and the inmates are limited to one hour of exercise per day in a small indoor room.  *Id.* at 210-211.  Furthermore, placement in the Ohio supermax may be for an indefinite period with an initial 30-day assessment, followed by an annual review.  *Id.* at 211.  The *Wilkinson* Court stated that, "while any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context" which triggered a protected liberty interest in avoiding placement in the "supermax."  *Id.* at 224.

Nationwide, decisions since *Wilkinson* have been split as to whether a liberty interest exists in avoiding placement in administrative segregation, based largely on each court's analysis of the specific facts of the cases before them.  As one court previously noted, "[t]here is no single standard for determining whether a prison hardship is atypical and significant, and the 'condition or combination of conditions or factors . . . requires case by case, fact by fact consideration.'" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir.2003) (citation omitted).  Recently, within the Fourth Circuit, the United States District Court for the District of Maryland, in granting summary judgment to the defendants, found that the conditions of administrative segregation at the Maryland facility where the plaintiff was incarcerated did <u>not</u> create an atypical and significant hardship, although the same court had found that confinement at Maryland's "supermax" facility had implicated due process protections.  *Stedman v.* White, 2011 WL 2746730 *6 (D. Md., July 11, 2011).

The plaintiff's Amended Complaint concerns his continued confinement in administrative segregation and his progress in the Quality of Life Program, which is a

five-level stratified rehabilitative program required to be completed by inmates on administrative segregation.  The program rewards prisoners with increased privileges for good behavior, and provides the disincentive of repeating all or part of the program as a result of poor behavior.  The plaintiff claims that he was dropped from a level four back to a level one in the program without due process.  The plaintiff alleges that he was told he had "negative entries" in his chronological log that affected the decision, but was not advised of the entries or any specific factors that affected the decision to drop him back to the beginning of the program and, thus, he could not defend himself against that decision.

The plaintiff has not demonstrated that he has suffered any atypical or significant hardship in relation to ordinary prison life.  Thus, he has not established a liberty interest protected by the Due Process Clause.  Because the plaintiff has not demonstrated a protected liberty interest, the defendants were not required to grant any particular procedural protections to the plaintiff.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, and should be dismissed pursuant to sections 1915(e)(2)(B) and 1915A, and the decisions in *Twombly* and *Iqbal*.

## <u>RECOMMENDATION</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this civil action from the docket of the court, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, for failure to state a claim upon which relief may be granted.

The plaintiff is notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to the plaintiff.

May 30, 2012

Mary E. Stanley
United States Magistrate Judge